JAMES E. POTTER, Respondent, v. CHARLES A. EVERETT, Appellant.

Kansas City Court of Appeals, March 31, 1890.

1.   **Contract: GROWING TIMBER : LICENSE.**   An unsealed and unacknowledged written contract, whereby, for a valuable consideration to be thereafter paid, growing timber on a certain piece of land is sold, is a mere executory contract and conferred but a license to remove the trees.

2. **Growing Trees:** REALTY: LICENSE TO ENTER AND REMOVE. Whatever may be the law elsewhere, growing trees,. standing on land, are, in this state, a part of the realty and must so remain until severed therefrom, and the title to them while so standing·can be passed and acquired only by a statutory deed ; and an intention on the part of the licenser and the licensee, evinced by contract, that the latter shall within a reasonable time enter, sever and remove such growing trees, does not have the effect to convert the same into personal property, until the license is exercised and this, though the license within certain limits be irrevocable.

3. **Execution:** PROPERTY SEIZED UNDER: CLAIMED BY ANOTHER. When the rights of a licensee to enter, sever and cut growing trees are interfered with by means of an execution, his remedy for such wrong cannot be pursued under the provision of sections 2366, *et seq.*, Revised Statutes, 1879.

4. ———: LICENSE: PERSONAL TRUST NOT VENDIBLE. A license to enter upon another's land and sever and remove standing trees therefrom is in its nature a personal trust, and not the subject of a levy and sale under execution.

*Appeal from the Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Walker & Johnston,* for the appellant.

(1) The court erred in refusing each of the instructions asked by the execution plaintiff, Charles A. Everett. Growing timber is an interest in lands, and any conveyance thereof, to be effectual, must be by deed under seal. R. S. 1879, sec. 674 ; *McIlvaine v. Harris,* 20 Mo. 457 ; *Deland v. Vanstone,* 26 Mo. App. 297 ; *Andrews v. Costican,* 30 Mo. App. 29 ; *Green v. Armstrong,* 1 Denio, 550 ; *McGregor v. Brown,* 10 N. Y. 114 ; *Slocum v. Seymour,* 36 N. J. 138 ; 1 Benjamin on Sales [ 4 Am. Ed.] sec. 120 ; 1 Washburn on Real Property [ 6 Ed.] 14. ( 2 ) The attempted sale of the growing timber by White, the owner of the land, to Steinbrink, it not being by deed under seal, created

a mere license in Steinbrink to enter on the land, and cut and remove the timber. *Andrews v. Costican*, 30 Mo. App. 29; *Fuhr v. Dean*, 26 Mo. 116. (3) Steinbrink's interest, being a mere license, could not be sold by him to Potter. A license to be exercised upon the land of another is a personal trust and confidence, and is not assignable; although it may be binding as between the parties, it will not pass to a purchaser. *Fuhr v. Dean*, 26 Mo. 116; *Howe v. Batchelder*, 49 N. H. 204; *Carleton v. Redington*, 21 N. H. 291; *Cowles v. Kidder*, 24 N. H. 364; *Emmerson v. Fisk*, 6 Greenl. (Maine) 200; *Mendenhall v. Klinck*, 51 N. Y. 246, 258; *Daniels v. Bailey*, 43 Wis. 566; *Morrill v. Mackman*, 24 Mich. 279; *Kamphouse v. Gaffner*, 73 Ill. 453; *Manning v. Frazier*, 96 Ill. 279; Browne St. Frauds [4 Ed.] sec. 22; 1 Washburn Real Prop. 623, 399. (4) If the attempted sale by White to Steinbrink had been by deed under seal, and acknowledged, this would have operated as a severance in law of the growing timber, converting it into personalty; and Steinbrink by oral contract could then have sold to Potter; otherwise not. *Kingsley v. Holbrook*, 45 N. H. 313. (5) The attempted sale by White to Steinbrink, not being by deed under seal, did not operate as a severance of the growing timber, and there could therefore be no possession of the growing timber separate from the possession of the land. White being the owner, and in possession of the land, was also in possession of the timber growing on it. *Renshaw v. Lloyd*, 50 Mo. 368; *Railroad v. Freeman*, 61 Mo. 80; *Bell v. Clark*, 30 Mo. App. 224; *Owens v. Lewis*, 15 Am. Rep. 295, *loc. cit.* 321; *Schulenberg v. Harriman*, 21 Wall. 44. (6) Even if the attempted sale by White to Steinbrink was suffi-. cient (which we deny), yet the attempted sale by Steinbrink to Potter was not sufficient under the statute of frauds. The price exceeded thirty dollars, and there was no part payment. The agreement to discharge

or cancel a debt is not a part payment, under this statute. *Combs v. Bateman*, 10 Barb. 573 ; *Fox v. Hall*, 74 Mo. 315 ; Benjamin on Sales [ 4 Am. Ed.] sec. 192. ( 7 ) ·The proceeding under section 2366, Revised Statutes, 1879, is cumulative as a remedy. It does not deprive the claimant of his remedy by replevin, trover or trespass, or his action against the sheriff on his bond. As in the other cases, this proceeding is ·"a formal trial in court of the rights of property." *Houx v. Shaw*, 18 Mo. App. 45 ; *Stephen v. Springer*, 23 Mo. App. 375 ; *State ex rel. Mastin v. McBride*, 81 Mo. 349 ; *Gartside v. Nixon*, 43 Mo. 138 ; *Fleming v. Clark*, 22 Mo. App. 218 ; *Schulenberg v. Harriman*, 21 Wall. 44 ; *Bosse v. Thomas*, 3 Mo. App. 472 ; *Stern Auc. & Com. Co. v. Mason*, 16 Mo. App. 473 ; *Young v. Glasscock*, 79 Mo. 574.

*T. M. Rice, Cosgrove & Johnston*, for the respondent.

(1) At the time of the levy of the execution the claimant Potter had such an interest in the timber in controversy as he could protect under section 2366, of the Revised Statutes, 1879. He had purchased it of Steinbrink with the consent and approval of the owner of the land ; he had, by authority of the owner of the land, entered upon the land and was engaged in cutting and removing said timber, and the same had been fully paid for. *McIlvaine v. Harris*, 20 Mo. 457. ( 2 ) We admit that Steinbrink only obtained from the owner of the soil a license to enter on the land and cut and remove the timber, and we admit that such license could not be sold by Steinbrink, except with the consent and approval of the owner of the soil. But the assent of White, the owner of the land, to the sale of Steinbrink to Potter, his authority to Potter to enter upon the land thereunder and cut and remove the timber therefrom, and his acceptance from him of

the balance of the purchase money, were in effect a revocation of the license to Steinbrink, and the granting a new license by the owner of the land to Potter, under which Potter held possession at the time of the levy. (3) Claimant's contention is that his interest in the timber, as shown by the foregoing facts, coupled with the actual possessions of the land and timber, authorized him to maintain a proceeding under section 2366. *Fuhr v. Dean*, 26 Mo. 116, and *Andrews v. Costican*, 30 Mo. App. 29, are the principal cases relied upon by appellant's counsel, and are lacking in every essential element of actual possession either of the land or timber; and are therefore not "on all fours" with the case at bar.

SMITH, P. J.—In October, 1886, John W. White, who was the owner, in fee, of eighty acres of land in Cooper county, entered into an unsealed and unacknowledged written agreement with Fred. Steinbrink, whereby the former, for the consideration of one hundred and fifty-one dollars, to be thereafter paid to him, in certain installments, sold to the latter the growing timber on said land. When the first installment became due, Steinbrink was unable to meet it. The written contract was then by parol agreement modified, Steinbrink securing all of the contract price of the timber, except about ten dollars, and White giving him until October, 1887, to remove the timber. Steinbrink, under this contract, caused part of the timber to be cut down, and sawed into lumber. In September, 1887, he wrote the respondent a letter, proposing to him to take the "timber he bought from White, for one hundred and fifty dollars, to get his money out of it." He was indebted to respondent, who was a merchant, for goods amounting to eighty-seven dollars. In November following, he notified White, that " I have sold all the timber on your land to Jim Potter, the same as I bought

it from you." White testified that he made no objection to respondent taking possession of the land, under the Steinbrink contract, but on the contrary he told him to go ahead and cut the timber whenever he wanted to, and that, thereupon, respondent caused some of it to be cut, and sawed. It further appears that respondent paid to White the small balance due, by Steinbrink, on the contract. In November, 1887, the appellant recovered judgment in the Cooper county circuit court against Steinbrink, and that afterwards on January 24, 1888, an execution was issued thereon, which was on the same day levied by the sheriff on the said growing timber, situate on said land, and thereupon the respondent made claim thereto as provided in sections 2366, 2367, Revised Statutes. The controversy, thus arising, proceeded, under the said statutory provisions, to judgment which was for Potter, the respondent.

I. Section 2366, *supra*, provides, that when *any personal property* * * *, or other effects, shall be seized by virtue of any execution, and any person other than the debtor, in the execution, shall in writing, verified by himself, or some credible person, claim such property or any part thereof, and shall in such claim set forth the right, title or interest of such claimant in and to said property, etc.; and the succeeding section provides that the pleadings and practice, in such case, shall be governed, as far as practicable, by the law relating to the same in civil actions.

The proceeding thus provided is quite analogous to that of the statutory action for claim and delivery of personal property, and, like that action, can be resorted to for the purpose of determining controverted claims to personal property only. It can no more be converted into an action of ejectment, than can that action.

The underlying question here is, whether the growing trees levied upon, and which are made the

subject of respondent's claim, should be treated as
personal property. If the former, the respondent's
claim may be sustained, but, if the latter, it must fail.
Considering, as we must, that the respondent succeeded
to all the rights which were acquired by Steinbrink,
under his contract with White, in respect to the trees
standing and growing on the land, mentioned, still,
under its provisions, can we treat such standing and
growing trees as goods, wares and merchandise? This
contract in our opinion must be regarded as if the
respondent was an original party thereto. He, by con-
sent of both Steinbrink and White, was substituted
therein in the place of Steinbrink. The rights of respond-
ent are not different than if he had been an original
party to the contract. As to the nature of the contract
it is sufficient to say, that it was nothing more than a
bill of sale. It was not sealed or acknowledged, and it
was therefore, as a conveyance under our statute,
ineffectual to convey any interest in the land. R. S.,
sec. 670; *Andrews v. Costican*, 30 Mo. App. 29; *Deland
v. Vanstone et al*, 26 Mo. App. 297; *Fuhr v. Dean*,
26 Mo. 116.

It was a mere executory contract as to the trees
still unsevered from the soil, and conferred upon the
respondent *but a license* to remove the same. The
respondent under the contract was authorized to cut
down and remove the timber, when he wanted to, which,
of course, meant within a reasonable time, otherwise
his license would amount to an interest in the land.
Though the respondent, under the contract, had only
a license to cut down and remove the timber, yet, as he
had paid the contract price therefor, and had entered
upon the land and removed a part of it, the contract
was so far executed, that the license it conferred was
for that reason not the subject of revocation within the
limitations already indicated. *Fuhr v. Dean, supra.*
But while the respondent was authorized, under his

license, to enter and sever the timber from the soil, can it be said that the existence of such unexercised license rendered such unsevered timber personal property? Can a part of the realty be in that way converted into chattels personal? Notwithstanding the existence of the. license, do not such growing trees remain part of the realty until there is a severance? It has been asserted by some eminent jurists and law writers, that the land on which growing trees are standing, and which are subject to be cut down and removed under a license for that purpose, is a warehouse in which the trees, considered as goods, are stored; while others have said, that such growing trees though primarily part. of the realty, they may become goods, wares, and merchandise when they are sold, and are subject to severance and removal, in a short or reasonable time after the sale, —such sale is not a part of the realty.

As to what is the correct doctrine in respect to this question, neither the elementary writers, nor the adjudged cases, will be found in entire accord. In 2 Washburn on Real Property, 598, it is said a man may grant trees growing on his land, without deed. The law regards these things as so much of the character of chattels, as not to require the formality of a deed, to pass the property in them. Sheppard's Touchstone, 231, is to the same effect.

In 1 Greenleaf's Cruise, 55, section 45, it is stated that "the principle now most generally recognized seems to be this: That in contracts for the sale of things annexed to and growing upon the freehold, if the vendee is to have the right to the soil for a time for the purpose of further growth and profit of that which is the subject of the sale, it is an interest in the land within the meaning of the fourth section of the statute of frauds, and must be proved by writing; *but when the thing is in prospect of separation from the soil, immediately or within a reasonable and convenient time, without a*

*stipulation for the beneficial use of the soil, but with a mere license to enter and take it away, it is to be regarded as substantially a sale of goods only, and so not within the statute; although an incidental benefit may be derived to the vendee from the circumstance that the thing may remain for a time upon the land.*"

The *italicized* portion of the preceding paragraph was quoted approvingly by Judge Scott, in *McIlvaine v. Harris*, 20 Mo. 458, which was a case where a deed was executed for land with a growing crop of wheat upon it, and it was held that parol evidence was inadmissible to show that the wheat was reserved by the grantor. This evidence shows that an interest in the land did not pass, which the law said did pass. In *Marshall v. Green*, 1 Common Pleas Division (Eng. Law Rept.) 35, Lord Coleridge, C. J., in an able and exhaustive opinion, discusses the proposition, whether, when the thing sold—growing trees—is to be taken away as soon as possible, the contract is not for an interest in land, and remarks, amongst other things, that "apart from any decisions on the subject, and as a matter of common sense, it would seem obvious that a sale of twenty-two trees, to be taken away immediately, was not a sale in land but merely of so much timber." In Browne on the Statute of Frauds, section 254, it is said that the doctrine of *Marshall v. Green, supra*, had been previously declared and followed in the courts of last resort, in the states of Maine, Kentucky, Maryland, Connecticut and Pennsylvania.

*Sterling v. Baldwin*, 42 Vt. 306, was a suit for trespass for breaking and entering the plaintiff's close, and cutting and taking away a quantity of hemlock timber. Plea, the general issue. The defendants gave in evidence this writing:

"August 24, 1864, sold to William Quimby all the hemlock timbers standing and down, east of Heselton's potato field, on the minister's lot, so called. Quimby is to have one year from next June to get the timbers

off the land. Received one hundred dollars in full of the timber. ADAMS HESELTON."

It was held that the sale of the trees, evidenced by the writing, vested in Quimby the property with the right to take the trees away within the time specified. Between the parties to the contract, the trees were mere chattels. Contracts for *fructus industriales* are at common law considered emblements, and go to the executor, while contracts for *prima vestura* go to the heir as if the realty. Browne on Stat. Frauds, sec. 250. In *Whitman v. Walker*, 1 Met. 313, it was declared that a license for one to enter and remove trees would pass no interest in the land and would be valid and enforceable without writing. These authorities are quite convincing that the growing trees in land may be bargained for and sold as goods and chattels. To borrow the language of COLERIDGE, C. J., in *Marshall v. Green, supra*, "Common sense tells us that this may be done."

But, whatever may be the law elsewhere, it seems to be held in this state that growing trees, standing on land, are a part of the realty, and that title to them, while so standing, can be passed and acquired only by a statutory deed. *Deland v. Vanstone*, 26 Mo. App. 297; *Andrews v. Costican*, 30 Mo. App. 297; *Railroad v. Truman*, 61 Mo. 80.

According to our understanding of the law as it has been declared in the cases just cited, the growing trees here in dispute are a part of the realty and must so remain until severed therefrom; and that an intention on the part of the licenser and licensee, evinced by the contract, that the latter shall within a reasonable time enter, sever and remove such growing trees, does not have the effect to convert the same into personal property, until the license is exercised, and this, though the license within certain limits, be irrevocable. The right to enter, sever and remove the trees is all that respondent can claim, and if this right be interfered with before

exercised by the appellant or any one else, the remedy cannot be pursued under the provisions of the statute here sought to be made available.

It follows, from these consideration, that in so far as the instructions given by the circuit court declared the said standing and growing trees to be personal property, and not part of the realty, the same were erroneous. We are not understood as holding that the contract already alluded to, and which conferred upon the respondent a license to enter upon said land and cut down and remove the growing trees therefrom, was invalid and inoperative, in any respect, or that a sale of. said growing trees by the sheriff, under his said levy and execution, would pass any title thereto.

It may not be out of place to here remark, that the license of Steinbrink under said contract, to enter upon White's land and sever and remove the standing trees therefrom, was in its nature a personal trust, and not the subject of a levy and sale under execution. It could not even be assigned by Steinbrink without the consent of the licenser.

The judgment of the circuit court, for these reasons, will be reversed. All concur.